1    FRANK N. DARRAS #128904, Frank@DarrasLaw.com
2    LISSA A. MARTINEZ #206994, LMartinez@DarrasLaw.com
     SUSAN B. GRABARSKY # 203004, SGrabarsky@DarrasLaw.com
3

4    3257 East Guasti Road, Suite 300
     Ontario, California 91761-1227
5    Telephone:  (909) 390-3770
6    Facsimile:  (909) 974-2121

7    Attorneys for Plaintiff

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11   KELVIN HAYWOOD,                    Case No: CV11- 05209 PSG (MANX)

12             Plaintiff,               COMPLAINT FOR BENEFITS UNDER
                                        AN EMPLOYEE WELFARE BENEFIT
13                                      PLAN
14        vs.

15   LIFE INSURANCE COMPANY OF
     NORTH AMERICA; and, KELLOGG
16   COMPANY EMPLOYEE WELFARE
     BENEFIT PLAN,
17

18             Defendants.

19

20        Plaintiff alleges as follows:

21        1.    This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337

22   and 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Income Security

23   Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by

24   Plaintiff for Disability benefits under an employee benefit plan regulated and governed

25   under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C.

26   § 1331 as this action involves a federal question.

27        2.    The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of

28   the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.



1    Those avenues of appeal have been exhausted.

2        3.      Plaintiff is informed and believes and thereon alleges that Defendant,

3    KELLOGG COMPANY EMPLOYEE WELFARE BENEFIT PLAN ("Plan") is an

4    employee welfare benefit plan established and maintained by Kellogg Company

5    ("Kellogg"), to provide its employees and those of its subsidiaries and affiliates,

6    including Plaintiff, KELVIN HAYWOOD ("MR. HAYWOOD"), with income protection in

7    the event of a disability and is the Plan Administrator.

8        4.      Plaintiff alleges upon information and belief that Defendant, LIFE

9    INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times

10   was, a corporation duly organized and existing under and by virtue of the laws of the

11   State of Pennsylvania, authorized to transact and transacting the business of insurance

12   in this state, and, the insurer and Claims Administrator for the Plan.

13       5.      Plaintiff further alleges that venue is proper in this district pursuant to 29

14   U.S.C. § 1132(e)(2)[1] in that defendant LINA, who fully insured the policy and who is

15   ultimately liable if Plaintiff is found disabled, may be found in this district.  Since on or

16   about November 1, 1956, LINA has been registered as a corporation with the state of

17   California, has extensive contacts within the state, employs California residents, conducts

18   ongoing business within the state and therefore, may be found within the state.

19       6.      At all relevant times Plaintiff was a resident and citizen of the United

20   States, an employee of Kellogg, its successors, affiliates and/or subsidiaries, and a

21   participant in the Plan.

22       7.      Based upon information and belief, Plaintiff alleges that at all relevant

23   times herein Plaintiff was covered under group disability policy number FLK-980005 that

24

25

26   _____

27   [1] 29 USC section 1132(e)(2) provides: "Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the
28   breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

1  had been issued by Defendant LINA[2] to Kellogg to insure its Plan, and the eligible

2  participants and beneficiaries of the Plan, including Plaintiff. A copy of Policy is attached

3  hereto as Exhibit "A."

4       8.     The subject Policy promised to pay MR. HAYWOOD monthly long term

5  disability benefits for a specified period of time should he become disabled. Therefore,

6  LINA both funds and decides whether the claimants will receive benefits under the Plan

7  and as such suffers from a structural conflict[3].

8       9.     According to the terms of the Plan, LINA promised to pay disability

9  benefits to MR. HAYWOOD as follows:

| Term | Provision |
|------|-----------|
| **Benefit Waiting Period** | **Class 1, 2, 4, 5:** 26 weeks<br><br>**Class 3:** 365 days |
| **Disability Benefit** | **Class 1, 4:**<br><br>**Core Plan**: The lesser of 50% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability |

---

[2] Although correspondence to MR. HAYWOOD during the administration of this claim has "CIGNA" on the letterhead, LINA was the underwriting and issuing company. Additionally, according to correspondence to MR. HAYWOOD on the claim: "CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America....Products and services are prodded by these insurance company subsidiaries and not by CIGNA Corporation." Therefore, both CIGNA and Life Insurance Company of North America will be referred to as "LINA" herein.

[3] Where a plan administrator "both decides who gets benefits and pays for them, … it has a direct financial incentive to deny claims," and therefore "labors under … a conflict of interest." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 511 F.3d 1206, 1211 (9th Cir. 2008). *See also Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2349-50 (2008) (dual role where administrator both determines eligibility for benefits and funds benefits creates a conflict of interest). Pursuant to *Abatie*, "a reviewing court <u>must always</u> consider the inherent conflict that exists when a plan administrator both administers and funds it." *Saffon*, 511 F.3d at 1211 (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006)(emphasis added). "When reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, [the Court] must determine the extent to which the conflict influenced the administrator's decisions and discount to that extent the deference … accorded the administrator's decision." *Id.* at 1212. As the Supreme Court recently explained, the "conflict of interest...should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to cases where an insurance company administrator has a history of biased claims administration." *Glenn,* 128 S. Ct. at 2351.



| Term | Provision |
|------|-----------|
| | Benefit, reduced by any Other Income Benefits. |
| | **Buy-Up Plan:** |
| | The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other income Benefits. |
| | **Class 2:** The lesser of 60% of an employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits |
| | **Class 3:** The lesser of 50% of the first $2,000 of monthly Covered Earnings rounded to the nearest dollar, or 100% of the first $2,000 of monthly Covered Earnings rounded to the nearest dollar, reduced by any Other Income Benefits. |
| | **Class 5:** The lesser of 50% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any other Income Benefits. |
| **Maximum Disability Benefit** | **Class 1, 4, 5:** $30,000 per month<br>**Class 2:** $4,000 per month<br>**Class 3:** $1,000 per month |
| **Maximum Benefit Period** | The later of the Employee's SSNRA* or the Maximum Benefit Period listed below. |

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| **Class 1, 3, 4, 5** | |
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| **Class 2** | |
| Under Age 60 | The Employee's 65th birthday. |

| Term | Provision |
|------|-----------|
| **Disability** | **Class 1, 3, 4, 5:** An Employee is Disabled if, because of Injury or Sickness,<br>1. he or she is unable to perform all the material duties of his or her |



| Term | Provision |
|---|---|
| | regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and |
| | 2. after Disability Benefits have been payable for 24 months he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings. |
| | **Class 2:** |
| | An Employee is Disabled if, because of Injury or Sickness, |
| | 1. he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and |
| | 2. after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings. |

10.     Prior to his disability, on or about October 22, 2007, MR. HAYWOOD had been employed with Kellogg as a Field Sales Representative whose primary duties included, but were not limited to, the following:

- Selling a mix of company products within a specific geographic area to achieve optimum revenue, develop and maintain excellent customer relationships;

DarrasLaw

1    • Ensuring Kellogg's snacks were on shelves and displays per
2      company policy; organizing, rotating and keeping shelf stock
3      current during each store visit;
4    • Climbing, stooping, lifting, bending, standing, reaching, kneeling;
5      and lifting;
6    • Traveling daily within his territory and occasional travel outside of
7      his territory.

8    11.    However, due to medical conditions, including, but not limited to, deep
9    vein thrombosis[4], MR. HAYWOOD became disabled under the terms of the Plan and
10   subsequently submitted a claim to LINA for payment long term disability benefits.

11   12.    LINA actually paid short term disability benefits, and, after a denial in
12   January of 2009, and subsequent appeal, paid long term disability benefits up until on or
13   about April 20, 2010, but unreasonably, unlawfully, capriciously and arbitrarily failed to
14   pay any of the remaining benefits to which MR. HAYWOOD was entitled after that date;
15   and, also failed to pay interest on the late payment that was made on or about February
16   4, 2010.

17   13.    According to LINA's denial letters dated on or about February 4, 2010, and
18   December 9, 2010:

19   • **February 4, 2010:**
20      ▪ "... your claim for Long Term Disability (LTD) benefits has been
21        approved for a limited period through 4/20/2010."
22      ▪ "Your first check...has been sent under separate cover on
23        2/4/2010. This represents benefits due for the period of
24        12/21/2008 through 4/20/2010."
25      ▪ "As of 4/21/2010, the day your definition of disability is due to

26   _____

27   [4] ***Deep venous thrombosis*** is the formation of a blood clot in a vein that is deep inside a part of the
28   body, usually the legs. The clot can block blood flow and cause swelling and pain. When a clot breaks off
     and moves through the bloodstream, this is called an embolism. An embolism can get stuck in the brain,
     lungs, heart, or other area, leading to severe damage.

1             change following 24 months of benefits, we are no longer able

2             to approve your claim for LTD benefits."

3         ▪   "You have the right to bring a legal action for benefits under the

4             Employee Retirement Income Security Act of 1974 (ERISA)

5             section 502(a) following an adverse benefit determination on

6             appeal."

7         •   **December 9, 2010**: "We have reviewed your claim as requested in

8             your Notice of Appeal and must deny your entitlement to

9             benefits...Please note that you have a right to bring legal action

10           regarding your claim under the ERISA section 502(a)...."

11      14.    In so doing, LINA unreasonably, unlawfully, arbitrarily and capriciously

12 failed to identify all of the medical personnel who reviewed his claim; relied upon the

13 opinions of in house financially biased physicians who were not qualified to render an

14 opinion regarding MR. HAYWOOD's medical condition, including Dr. Paul Seiferth[5];

15 failed to have MR. HAYWOOD independently examined; failed to have MR. HAYWOOD

16 undergo a functional capacity evaluation; failed to complete a full and unbiased

17 vocational assessment[6]; and, misrepresented the terms of the Policy[7].

18      15.    Additionally, LINA knew or should have known that the documentation

19 submitted to and/or obtained by LINA clearly substantiated his disability, including, but

20 not limited to, the following:

21 _____

22 [5] Based upon information and belief, Plaintiff alleges that this doctor is a Family Physician; has been
23 employed by LINA since in or about 2003; and, according to one case, Dr. Seiferth's conclusions were so
cursory "as to amount to mere rubber stamping."

24 [6] In determining the occupations that it alleged MR. HAYWOOD could perform, LINA relied upon the
25 outdated Dictionary of Occupational Titles ("DOT"), which was an abuse of discretion. According to the U.
S. Department of Labor, the DOT was last updated in 1991 and has been replaced by O*Net. In fact,
26 some of the occupations which LINA alleged MR. HAYWOOD could perform have not been updated in
the DOT since 1977, when MR. HAYWOOD was approximately eight (8) years old.

27 [7] In correspondence from LINA to MR. HAYWOOD, LINA stated that there were no "significant" and/or
28 "clinical" findings to support his "inability to function." At the time that LINA wrote this, it knew, or should
have known, that the Policy did not require "significant" and/or "clinical" findings to support his "inability to
function" in order to qualify for benefits.

- 7 -

| Date | Medical Examination/Finding/Explanation/Documentation |
|---|---|
| 04/17/2008 | **INTERNAL LINA NOTE**<br><br>4/17/08 email correspondence w/AP [Attending Physician] notes that I spoke with him on this several months ago. He is able to keep the pain and swelling under control as long as he is able to limit his activity and standing. If he does not then his sx [symptoms] return. Most people do not swell like he does with the pain. |
| 04/25/2008 | **LETTER FROM LINA TO MR. HAYWOOD**<br><br>We are writing to inform you that your claim for Long Term Disability (LTD) benefits has been approved.<br><br>Your first check... will be sent under separate cover on or around May 13, 2008. This represents benefits due for the period of April 21, 2008 through May 20, 2008. |
| 04/29/2008 | **MEDICAL RECORD BY DR. POWELL**<br><br>**HISTORY OF PRESENT ILLNESS**: This patient has a history of a right lower extremity deep vein thrombosis with recurrent swelling and pain. He has been compliant with his medications but his Coumadin[8] level has been difficult to control. |
| 01/20/2009 | **MEDICAL RECORD**<br><br>Patient with C6-7 herniation & will need surgery. |
| 02/02/2009 | **MEDICAL NOTE**<br><br>Patient has had increase in leg DVT and has been referred to hematologist for further management. |
| 05/05/2009 | **LETTER FROM DR. KORPINEN TO WHOM IT MAY CONCERN**<br><br>Due to Kelvin Haywood's foot condition, he needs to have limited weight bearing. |
| 07/09/2009 | **MEDICAL RECORD**<br><br>DM Type II[9] – poorly controlled.<br><br>Hypertriglyceridemia[10] - Start Trilipix[11]. |

---

[8] Coumadin is an oral anticoagulant that inhibits the synthesis of clotting factors, thus preventing blood clot formation. Side effects include bleeding and necrosis (gangrene) of the skin.

[9] ***Type 2 diabetes***, once known as adult-onset or noninsulin-dependent diabetes, is a chronic condition that affects the way a person's body metabolizes sugar (glucose), the body's main source of fuel. Symptoms include fatigue, and blurred vision.



| Date | Medical Examination/Finding/Explanation/Documentation |
|---|---|
| 08/31/2009 | **LETTER FROM MR. HAYWOOD'S ATTORNEY TO LINA**<br><br>Mr. Haywood remains off of work as the dangerous blood clot in his leg remains unresolved. In addition, the herniated disc in Mr. Haywood's neck at C6-7 may require surgical intervention. |
| 10/13/2009 | **EMPLOYABILITY ANALYSIS**<br><br>Mr. Haywood's own occupation as a Territory Manager involves driving a truck from store to store all day long, delivering food products and setting up displays. Shelves must be stocked daily with new products, and old product rotated out to ensure freshness.<br><br>The difficulty for Mr. Haywood is that he has multiple disabilities, which impair his ability to perform these physical movements. The blood clot in his leg necessitates limiting standing to no more than one hour, and he must elevate his leg for 10-15 minutes every 1-2 hours.<br><br>Due to joint pain, arthropathy from gout, and lower extremity edema, his podiatrist has advised him to decrease his activity, to sit, and limit his weight-bearing. Because of his cervical problems, he has also been advised not do any work above shoulder level, and to do no lifting over 25 pounds.<br><br>Whether or not Mr. Haywood is capable of performing any other occupation depends on his ability to perform work at a less strenuous level of physical demands.<br><br>In Mr. Haywood's case, his options are extremely limited due to a combination of impairments which build upon each other to the point that his employment possibilities are reduced to the point where it is not feasible to work.<br><br>His cervical problems restrict him to no lifting over 25 pounds and no work above shoulder level. His blood clot, gout, and joint pain keep him from standing over one hour; due to his blood clot he cannot sit without elevating his leg for 10-15 minutes every 1-2 hours. No job, whether at |

[10] In medicine, **_hypertriglyceridemia_** denotes high (_hyper-_) blood levels (_-emia_) of triglycerides, the most abundant fatty molecule in most organisms. It has been associated with atherosclerosis [hardening of the arteries].

[11] This medication, which is also known as Fenofibric acid, is used along with a proper diet to help lower "bad" cholesterol and fats (such as LDL, triglycerides) and raise "good" cholesterol (HDL) in the blood. Side effects of this medication include headaches; back pain; upper respiratory tract infection; arm or leg pain; nausea; and, dizziness.



| Date | Medical Examination/Finding/Explanation/Documentation |
|---|---|
| | the sedentary or light levels, allows for this without special accommodation, which is not feasible for most occupations.<br><br>He suffers from a painful herniated disc at C6-7, with radicular symptoms down his arms, which may require surgical intervention. He has decreased range of motion in his neck. He also has decreased strength of the trunk musculature and the right shoulder.<br><br>In addition to these impairments, he suffers from diabetes, which exacerbates his other problems. His doctor has indicated that he has swelling that most people do not experience with this same level of pain, and is concerned about his condition becoming chronic. He is on several medications, and his Coumadin has been difficult to control.<br><br>For the reasons outlined above, due to Mr. Haywood's disability he is unable to perform the essential duties of his own occupation as they are regularly performed for his employer, or in the open labor market.<br><br>Furthermore, due to this same disability, he is unable to perform all the material duties of any occupation for which he is or may reasonably become qualified based on his education, training, or experience. |
| 11/24/2009 | **MEDICAL RECORD BY DR. TOMPKINS**<br><br>**HISTORY OF PRESENT ILLNESS:** He continues to have pain in his left shoulder radiating into his arm with some numbness in the hand.<br><br>**RADIOLOGIC STUDIES:** his MRI from January as noted before a shows a lateral recess/foraminal disk herniation at C6/7.<br><br>**IMPRESSION:** Persistent cervical radiculopathy[12]. |
| 03/17/2010 | **MEDICAL RECORD**<br><br>Trilipix made him dizzy. Meds: Metformin[13]. |
| 04/29/2010 | **MEDICAL RECORD BY DR. TOMPKINS**<br><br>**HISTORY OF PRESENT ILLNESS:** Kelvin L. Haywood returns to the office today. He continues to have severe neck and left arm pain and numbness that is unchanged from his previous visit. He has also |

---

[12] **_Radiculopathy_** is a condition due to a compressed nerve in the spine that can cause pain, numbness, tingling, or weakness along the course of the nerve.

[13] Metformin is an oral medication that lowers blood glucose (sugar) and is used for treating type 2 diabetes. Side effects include nausea; vomiting; and diarrhea.

| Date | Medical Examination/Finding/Explanation/Documentation |
|------|-------------------------------------------------------|
| | developed some new right shoulder pain. |
| | I've given him a Medrol[14] dose pack to see if it helps reduce symptoms. |
| 08/19/2010 | **CERVICAL SPINE MRI** **Clinical History** Bilateral upper extremity radiculoapthy x2 years. **C6-7** There is 1-2 mm of posterior osseous ridging and disk bulging. There is left greater than right uncinate arthropathy with foraminal stenosis on the left. Disk dehydration at all levels from 3 through C6-7. |
| 09/15/2010 | **EMPLOYABILITY SUPPLEMENTAL REPORT** As noted in my previous report, "in order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." These requirements are part of the full definition of sedentary work, as utilized by the U.S. government. Yet, Mr. Haywood cannot sit long enough to meet even these minimal requirements. Alternately, he cannot be on his feet for long periods of time either. Additionally, all of the medical issues noted in the previous report remain a problem. Mr. Haywood has to elevate his leg for 10-15 minutes every one to two hours due to thrombosis; he is on multiple medications which produce side-effects, the management of which is of concern to his doctors. He is also diabetic, and at risk for dangerous bleeding. Due to Mr. Haywood's disability he is unable to all the material duties of any occupation for which he is or may reasonably become qualified based on his education, training, or experience. |

16. To date, even though MR. HAYWOOD has been, LINA has not paid MR. HAYWOOD any disability benefits beyond on or about April 20, 2010. The arbitrary and capricious nature of LINA's denial decision is evidenced by, but not limited to, the following:

---

[14] This medication, also known as Methylprednisolone, is used to achieve prompt suppression of inflammation. Side effects include high blood pressure; headache; muscle weakness; glaucoma; worsening of diabetes; convulsions and psychic disturbances (depression, insomnia, personality changes).

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to promptly identify the medical consultants who reviewed his file; failing to timely advise MR. HAYWOOD of what specific documentation it needed from him to perfect his claim; and, failing to provide a complete copy of all documents, records, and other information relevant to his claim despite a request by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);

- LINA ignored the obvious, combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim; and,

- LINA ignored the opinions of MR. HAYWOOD's board certified treating physicians and/or misrepresented the opinions of MR. HAYWOOD's treating physicians.  Deference should be given to the treating physician's opinions as there are no *specific*, *legitimate* reasons for rejecting the treating physicians' opinions which are based on *substantial evidence* in the claim file.  Further, LINA's highly conflicted *physician's* opinion does not serve as *substantial evidence*, as it is not *supported by evidence* in the claim file, was not issued by a physician with the same level of medical expertise as the board certified treating physicians, nor is it *consistent with the overall evidence* in the claim file.

17.    For all the reasons set forth above, the decision to deny disability insurance benefits was arbitrary, capricious, wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan and contrary to law. Clearly, LINA abused its discretion in deciding to deny this claim as the evidence shows its denial decision was arbitrary and capricious. Further, LINA's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006)

1    and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

2    18.    Additionally, ERISA imposes higher-than-marketplace quality standards

3    on insurers. It sets forth a special standard of care upon a plan administrator, namely,

4    that the administrator "discharge [its] duties" in respect to discretionary claims

5    processing "solely in the interests of the participants and beneficiaries" of the plan, §

6    1104(a)(1); it simultaneously underscores the particular importance of accurate claims

7    processing by insisting that administrators "provide a 'full and fair review' of claim

8    denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements

9    marketplace and regulatory controls with judicial review of individual claim denials, see

10   § 1132(a)(1)(B).

11   19.    As a direct and proximate result of LINA's failure to provide MR.

12   HAYWOOD with disability benefits, MR. HAYWOOD has been deprived of said

13   disability benefits beginning on or about April 20, 2010, to the present date.

14   20.    As a further direct and proximate result of the denial of benefits, MR.

15   HAYWOOD has incurred attorney fees to pursue this action, and is entitled to have

16   such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

17   21.    A controversy now exists between the parties as to whether MR.

18   HAYWOOD is disabled as defined in the Plan.  Plaintiff seeks the declaration of this

19   Court that he meets the Plan definition of disability and consequently he is entitled to

20   benefits from the Plan.  In the alternative, Plaintiff seeks a remand to the Plan

21   Administrator for a determination of Plaintiff's claim consistent with the terms of the

22   Plan.

23   WHEREFORE, Plaintiff prays for relief against Defendants as follows:

24   1.    An award of benefits in the amount not paid MR. HAYWOOD beginning on

25   or about the April 20, 2010, together with interest at the legal rate on each monthly

26   payment from the date it became due until the date it is paid (plus interest on the late

27   payment made on or about February 4, 2010); or, in the alternative, a remand to the

28   Plan Administrator for a determination of Plaintiff's claim consistent with the terms of the

1    Plan;

2         2.      An order determining MR. HAYWOOD is entitled to future disability

3    payments so long as he remains disabled as defined in the Plan;

4         3.      For reasonable attorney fees incurred in this action; and

5         4.      For such other and further relief as the Court deems just and proper.

6

7    Dated:  June 21, 2011              **D** DarrasLaw

8

9

10                                     FRANK N. DARRAS
                                       LISSA A. MARTINEZ
11                                     SUSAN B. GRABARSKY
                                       Attorneys for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIFE INSURANCE COMPANY OF NORTH AMERICA
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(800) 732-1603  TDD (800) 552-5744
A STOCK INSURANCE COMPANY

GROUP POLICY

| | |
|---|---|
| POLICYHOLDER: | Kellogg Company |
| POLICY NUMBER: | FLK-980005 |
| POLICY EFFECTIVE DATE: | January 1, 2003 |
| POLICY ANNIVERSARY DATE: | January 1 |

This Policy describes the terms and conditions of coverage. It is issued in Michigan and shall be governed by its laws. The Policy goes into effect on the Policy Effective Date, 12:01 a.m. at the Policyholder's address.

In return for the required premium, the Insurance Company and the Policyholder have agreed to all the terms of this Policy.

Robert J. Upton, Secretary

Gregory H. Wolf, President

TL-004700

PITTSBURGH

JAN 2 9 2004

Group Life & Disability
Coverage Unit

97 v-1

000015

EXHIBIT A

## TABLE OF CONTENTS

SCHEDULE OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SCHEDULE OF BENEFITS FOR CLASS 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SCHEDULE OF BENEFITS FOR CLASS 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SCHEDULE OF BENEFITS FOR CLASS 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

SCHEDULE OF BENEFITS FOR CLASS 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SCHEDULE OF BENEFITS FOR CLASS 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ELIGIBILITY FOR INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

EFFECTIVE DATE OF INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TERMINATION OF INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONTINUATION OF INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

DESCRIPTION OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CLAIM PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

ADMINISTRATIVE PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

000016                          EXHIBIT A

## SCHEDULE OF BENEFITS

| | |
|---|---|
| **Premium Due Date** | Premiums are due in arrears on the date coinciding with the day of the Policy Anniversary Date or the last day of the month, if earlier. |

### Classes of Eligible Employees

On the pages following the definition of eligible employees there is a Schedule of Benefits for each Class of Eligible Employees listed below. For an explanation of these benefits, please see the Description of Benefits provision.

If an Employee is eligible under one Class of Eligible Employees and later becomes eligible under a different Class of Eligible Employees, changes in his or her insurance due to the class change will be effective on the first of the month following the change in class.

Class 1  All active, Full-time and Part-time salaried and non-union production Employees of the Employer, including Atlanta Distribution Center regularly working a minimum of 20 hours per week.

Class 2  All active, Full-time hourly Employees of Muncy Convenience Foods regularly working a minimum of 30 hours per week.

Class 3  All active, Full-time hourly Employees of Worthington Foods who are subject to a collective bargaining agreement and regularly working a minimum of 30 hours per week. If the Employee does not regularly work a minimum of 30 hours per week, the Employee is eligible if he or she has worked an average of 30 hours per week during the preceding 12 months or during the period of employment, if less than 12 months.

Class 4  All active, Full-time non-union production Employees of Worthington Foods - Zanesville regularly working a minimum of 30 hours per week, for a minimum of 4 calendar months.

Class 5  All active, Full-time Employees of the Employer, located in Puerto Rico, regularly working a minimum of 20 hours per week, for a minimum of 4 calendar months.

3

000017



## SCHEDULE OF BENEFITS FOR CLASS 1

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:        No Waiting Period

For Employees hired after the Policy Effective Date:        No Waiting Period

**Definition of Disability/Disabled**
An Employee is Disabled if, because of Injury or Sickness,

1.    he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and

2.    after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.

**Definition of Covered Earnings**

**Core Plan:**
For Full-time Employees, excluding Keebler Sales Employees, Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer during the prior calendar year. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

For Full-time Keebler Sales Employees, Covered Earnings means an Employee's annual salary including earnings received from bonuses and commissions or the default/market salary* as reported by the Employer for work performed for the Employer during the prior calendar year, whichever is higher.

For Part-time Employees, Covered Earnings means an Employee's average annual salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

**Buy-up Plan:**
For Full-time Employees, excluding Keebler Sales Employees, Covered Earnings means an Employee's annual wage or salary including earnings received from bonuses and commissions, as reported by the Employer for work performed for the Employer during the prior calendar year.

For Full-time Keebler Sales Employees, Covered Earnings means an Employee's annual salary including earnings received from bonuses and commissions or the default/market salary* as reported by the Employer during the prior calendar year, whichever is higher.

For Part-time Employees, Covered Earnings means an Employee's average annual salary including bonuses, as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins.

EXHIBIT A

000018

Covered Earnings are determined initially on the date an Employee applies for coverage. For Full-time Employees, a change in the amount of Covered Earnings is effective on January 1 of each year, if the Employer gives us written notice of the change and the required premium is paid. For Part-time Employees, a change in the amount of Covered Earnings is effective on the first day of the month following the change, if the Employer gives us written notice of the change and the required premium is paid.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

* Default/market salary is based on the average total compensation of such full-time Keebler Sales Employees.

**Benefit Waiting Period**                              26 weeks

A period of Disability is continuous even if the Employee can return to Active Service for up to 30 days during the Benefit Waiting Period. The length of the Benefit Waiting Period will not be extended by the number of days the Employee can return to Active Service.

**Disability Benefit**

Core Plan:
The lesser of 50% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits.

Buy-Up Plan:
The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

**Maximum Disability Benefit**                     $30,000 per month

*Work Incentive Benefits*
For the first 24 months the Employee is eligible for a Disability Benefit, the Disability Benefit is as figured above. If for any month during this period, the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of his or her Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 24 months, the Disability Benefit is as figured above, reduced by 50% of his or her current earnings received during any month he or she returns to work. If the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount figured above.

No Disability Benefits will be paid if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and he or she refuses to do so.

EXHIBIT A

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount he or she earns from this work during the period for which Disability Benefits are payable.

## Additional Benefits

*Survivor Benefit*

| | |
|---|---|
| Benefit Waiting Period: | After 6 Monthly Benefits are payable. |
| Amount of Benefit: | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

## Maximum Benefit Period

The later of the Employee's SSNRA* or the Maximum Benefit Period listed below.

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

*SSNRA means the Social Security Normal Retirement Age in effect under the Social Security Normal Retirement Act on the Policy Effective Date.

## Initial Premium Rates

| | |
|---|---|
| Core Plan: | $ .39 per $100 of Covered Payroll to a maximum of $60,000 |
| Buy-up Plan: | An additional $ .24 per $100 of Covered Payroll to a maximum of $60,000 |

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made. However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed the maximum amount as indicated above.

TL-004774

EXHIBIT A

SCHEDULE OF BENEFITS FOR CLASS 2

Eligibility Waiting Period

For Employees hired on or before the Policy Effective Date:          After 6 months of Active Service

For Employees hired after the Policy Effective Date:                 After 6 months of Active Service

**Definition of Disability/Disabled**
An Employee is Disabled if, because of Injury or Sickness,
1.   he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and
2.   after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings.

**Definition of Covered Earnings**
Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. Covered Earnings are determined initially on the date an Employee applies for coverage. A change in the amount of Covered Earnings is effective on the first day of the month following the change, if the Employer gives us written notice of the change and the required premium is paid.

It does not include amounts received as bonus, commissions, overtime pay or other extra compensation.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

**Benefit Waiting Period**                26 weeks

A period of Disability is continuous even if the Employee can return to Active Service for up to 30 days during the Benefit Waiting Period. The length of the Benefit Waiting Period will not be extended by the number of days the Employee can return to Active Service.

**Disability Benefit**              The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf.

7

000021

EXHIBIT A

| Maximum Disability Benefit | $4,000 per month |
|---|---|

*Work Incentive Benefits*
For the first 24 months the Employee is eligible for a Disability Benefit, the Disability Benefit is as figured above. If for any month during this period, the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of his or her Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 24 months, the Disability Benefit is as figured above, reduced by 50% of his or her current earnings received during any month he or she returns to work. If the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount figured above.

No Disability Benefits will be paid if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and he or she refuses to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount he or she earns from this work during the period for which Disability Benefits are payable.

**Additional Benefits**

*Survivor Benefit*               This Benefit does not apply to this class of Employee.

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Under Age 60 | The Employee's 65th birthday. |
| Age 60 or older | The end of 5 years from the date the Employee became Disabled. |

**Initial Premium Rates**

$ .96 per $100 of Covered Payroll to a maximum of $6,667.

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made. However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed the maximum amount as indicated above.

TL-004774

000022

EXHIBIT   A

SCHEDULE OF BENEFITS FOR CLASS 3

Eligibility Waiting Period

For Employees hired on or before the Policy Effective Date:          After 60 days of Active Service

For Employees hired after the Policy Effective Date:          After 60 days of Active Service

**Definition of Disability/Disabled**
An Employee is Disabled if, because of Injury or Sickness,

1.  he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and

2.  after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.

**Definition of Covered Earnings**
Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It includes contributions made through a salary reduction agreement, but does not include earnings received from awards, commissions, bonuses, overtime pay and other extra compensation. Covered Earnings are determined initially on the date an Employee applies for coverage. A change in the amount of Covered Earnings is effective on the date of the change, if the Employer gives us written notice of the change and the required premium is paid.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

**Benefit Waiting Period**          365 days

A period of Disability is continuous even if the Employee can return to Active Service for up to 60 days during the Benefit Waiting Period. The length of the Benefit Waiting Period will not be extended by the number of days the Employee can return to Active Service.

**Disability Benefit**

The lesser of 50% of the first $2,000 of monthly Covered Earnings rounded to the nearest dollar, or 100% of the first $2,000 of monthly Covered Earnings rounded to the nearest dollar, reduced by any Other Income Benefits.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

9

000023



**Maximum Disability Benefit**          $1,000 per month

*Work Incentive Benefits*

For the first 24 months the Employee is eligible for a Disability Benefit, the Disability Benefit is as figured above. If for any month during this period, the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of his or her Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 24 months, the Disability Benefit is as figured above, reduced by 50% of his or her current earnings received during any month he or she returns to work. If the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount figured above.

No Disability Benefits will be paid if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and he or she refuses to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount he or she earns from this work during the period for which Disability Benefits are payable.

**Additional Benefits**

*Survivor Benefit*

| | |
|---|---|
| Amount of Benefit: | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

**Maximum Benefit Period**

The later of the Employee's SSNRA* or the Maximum Benefit Period listed below.

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

*SSNRA means the Social Security Normal Retirement Age in effect under the Social Security Normal Retirement Act on the Policy Effective Date.

EXHIBIT A

**Initial Premium Rates**

$ .39 per $100 of Covered Payroll to a maximum of $2,000.

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made. However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed the maximum amount as indicated above.

TL-004774

11

EXHIBIT   A

000025

## SCHEDULE OF BENEFITS FOR CLASS 4

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:            None

For Employees hired after the Policy Effective Date:            None

**Definition of Disability/Disabled**

An Employee is Disabled if, because of Injury or Sickness,

1.   he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and

2.   after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.

**Definition of Covered Earnings**

**Core Plan:**

Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer during the prior calendar year. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

**Buy-up Plan:**

Covered Earnings means an Employee's annual wage or salary including earnings received from bonuses and commissions, as reported by the Employer for work performed for the Employer during the prior calendar year.

Covered Earnings are determined initially on the date an Employee applies for coverage. A change in the amount of Covered Earnings is effective on January 1 of each year, if the Employer gives us written notice of the change and the required premium is paid.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

**Benefit Waiting Period**            26 weeks

A period of Disability is continuous even if the Employee can return to Active Service for up to 30 days during the Benefit Waiting Period. The length of the Benefit Waiting Period will not be extended by the number of days the Employee can return to Active Service.

EXHIBIT A

**Disability Benefit**

Core Plan:
The lesser of 50% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits.

Buy-Up Plan:
The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

**Maximum Disability Benefit**          $30,000 per month

*Work Incentive Benefits*
For the first 24 months the Employee is eligible for a Disability Benefit, the Disability Benefit is as figured above. If for any month during this period, the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of his or her Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 24 months, the Disability Benefit is as figured above, reduced by 50% of his or her current earnings received during any month he or she returns to work. If the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount figured above.

No Disability Benefits will be paid if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and he or she refuses to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount he or she earns from this work during the period for which Disability Benefits are payable.

**Additional Benefits**

*Survivor Benefit*
| | |
|---|---|
| Benefit Waiting Period: | After 6 Monthly Benefits are payable. |
| Amount of Benefit: | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

13

000027

EXHIBIT  A

**Maximum Benefit Period**

The later of the Employee's SSNRA* or the Maximum Benefit Period listed below.

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

*SSNRA means the Social Security Normal Retirement Age in effect under the Social Security Normal Retirement Act on the Policy Effective Date.

**Initial Premium Rates**

| | |
|---|---|
| Core Plan: | $ .39 per $100 of Covered Payroll to a maximum of $60,000 |
| Buy-up Plan: | An additional $ .24 per $100 of Covered Payroll to a maximum of $60,000 |

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made.  However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed the maximum amount as indicated above.

TL-004774

14

EXHIBIT A

000028

## SCHEDULE OF BENEFITS FOR CLASS 5

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:        No Waiting Period

For Employees hired after the Policy Effective Date:        No Waiting Period

**Definition of Disability/Disabled**
An Employee is Disabled if, because of Injury or Sickness,

1.  he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and

2.  after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.

**Definition of Covered Earnings**

For Employees, excluding Keebler Sales Employees, Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer during the prior calendar year.  It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation. Covered Earnings are determined initially on the date an Employee applies for coverage.  A change in the amount of Covered Earnings is effective on January 1 of each year, if the Employer gives us written notice of the change and the required premium is paid.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

For Keebler Sales Employees, Covered Earnings means an amount of $25,000.

**Benefit Waiting Period**        26 weeks

A period of Disability is continuous even if the Employee can return to Active Service for up to 30 days during the Benefit Waiting Period.  The length of the Benefit Waiting Period will not be extended by the number of days the Employee can return to Active Service.

**Disability Benefit**        The lesser of 50% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

EXHIBIT  A

**Maximum Disability Benefit**          $30,000 per month

*Work Incentive Benefits*

For the first 24 months the Employee is eligible for a Disability Benefit, the Disability Benefit is as figured above. If for any month during this period, the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of his or her Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 24 months, the Disability Benefit is as figured above, reduced by 50% of his or her current earnings received during any month he or she returns to work. If the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount figured above.

No Disability Benefits will be paid if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and he or she refuses to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount he or she earns from this work during the period for which Disability Benefits are payable.

**Additional Benefits**

*Survivor Benefit*

| | |
|---|---|
| Benefit Waiting Period: | After 6 Monthly Benefits are payable. |
| Amount of Benefit: | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

**Maximum Benefit Period**

The later of the Employee's SSNRA* or the Maximum Benefit Period listed below.

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

*SSNRA means the Social Security Normal Retirement Age in effect under the Social Security Normal Retirement Act on the Policy Effective Date.

EXHIBIT   A

**Initial Premium Rates**

$ .39 per $100 of Covered Payroll to a maximum of $60,000.

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made.  However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed the maximum amount as indicated above.

TL-004774

17

**000031**

EXHIBIT  A

## ELIGIBILITY FOR INSURANCE

An Employee in one of the Classes of Eligible Employees shown in the Schedule of Benefits is eligible to be insured on the Policy Effective Date, or the day after he or she completes the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

Except as noted in the Reinstatement Provision, if an Employee terminates coverage and later wishes to reapply, or if a former Employee is rehired, a new Eligibility Waiting Period must be satisfied. An Employee is not required to satisfy a new Eligibility Waiting Period if insurance ends because he or she is no longer in a Class of Eligible Employees, but continues to be employed and within one year becomes a member of an eligible class.

TL-004710

## EFFECTIVE DATE OF INSURANCE

An Employee will be insured on the date he or she becomes eligible, if the Employee is not required to contribute to the cost of this insurance.

An Employee who is required to contribute to the cost of this insurance may elect to be insured only by authorizing payroll deduction in a form approved by the Employer and the Insurance Company. The effective date of this insurance depends on the date coverage is elected.

Insurance for an Employee who applies for insurance within 31 days after he or she becomes eligible is effective on the latest of the following dates.
1.      The Policy Effective Date.
2.      The date payroll deduction is authorized.
3.      The date the Insurance Company receives the Employee's completed enrollment form.

If an Employee's enrollment form is received more than 31 days after he or she is eligible for this insurance, the Insurability Requirement must be satisfied before this insurance is effective. If approved, this insurance is effective on the date the Insurance Company agrees in writing to insure the Employee.

If an Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the Employer on a Full-time basis.

TL-004712

EXHIBIT   A

## TERMINATION OF INSURANCE

The insurance on an Employee will end on the earliest date below.
1.      The date the Employee is eligible for coverage under a plan intended to replace this coverage.
2.      The date the Policy is terminated.
3.      The date the Employee is no longer in an eligible class.
4.      The day after the period for which premiums are paid.
5.      The date the Employee is no longer in Active Service.

TL-004714

## CONTINUATION OF INSURANCE

Disability Insurance continues if an Employee's Active Service ends due to a Disability for which benefits under the Policy are or may become payable.  Premiums for the Employee will be waived while Disability Benefits are payable.  If the Employee does not return to Active Service, this insurance ends when the Disability ends or when benefits are no longer payable, whichever occurs first.

If an Employee's Active Service ends due to an Employer approved unpaid family or medical leave of absence, insurance for that Employee will continue for up to 12 weeks if the required premium is paid.

Applicable to Classes 1, 4 and 5:
If an Employee's Active Service ends due to an Employer approved unpaid leave of absence, insurance for that Employee will continue for up to 12 weeks if the required premium is paid.

Applicable to Class 2:
If an Employee's Active Service ends due to an Employer approved unpaid leave of absence, insurance for that Employee will continue for up to 2 months if the required premium is paid.

Applicable to Class 3:
If an Employee's Active Service ends due to an Employer approved unpaid leave of absence, insurance for that Employee will continue until the earliest of the following dates if the required premium is paid:
1.      the date the leave of absence ends; or
2.      the end of the month in which the leave begins.

If an Employee's insurance is continued and he or she becomes Disabled during the leave of absence, Disability Benefits will not begin until the later of the following dates.
1.      the date the Benefit Waiting Period is satisfied
2.      the date the Employee was scheduled to return to Active Service

TL-004716

19
000033

EXHIBIT  A

## DESCRIPTION OF BENEFITS

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits to each class of Insureds.

**Disability Benefits**

The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

**Benefit Waiting Period**

The Benefit Waiting Period is the period of time an Employee must be continuously Disabled before Disability Benefits may be payable. The Benefit Waiting Period is shown in the Schedule of Benefits.

The Insurance Company will waive the Benefit Waiting Period for an Employee if benefits under a Prior Plan were payable on the Policy Effective Date and the Employee returns to Active Service within 6 months after that date. The return to Active Service must be for more than 14 consecutive days but less than 6 months. The later Disability must be caused by the same or related causes for the Benefit Waiting Period to be waived.

**Termination of Disability Benefits**

Disability Benefits will end on the earliest of the following dates.

1. The date an Employee earns more than the percentage of his or her Indexed Covered Earnings which is used to determine if an Employee is Disabled
2. The date the Insurance Company determines an Employee is not Disabled
3. The end of the Maximum Benefit Period
4. The date an Employee dies
5. The date the Employee refuses to participate in rehabilitation efforts as required by the Insurance Company
6. The date the Employee is no longer receiving Appropriate Care

**Successive Periods of Disability**

Once an Employee is eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability unless the Employee returns to Active Service for more than 6 consecutive months.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes or the later Disability occurs after coverage under the Policy ends.

The Successive Periods of Disability provision will not apply if an Employee is eligible for coverage under a plan that replaces this Policy.

20

000034

EXHIBIT A

## Mental Illness, Alcoholism and Drug Abuse Limitation

The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1.    Alcoholism
2.    Anxiety disorders
3.    Delusional (paranoid) disorders
4.    Depressive disorders
5.    Drug addiction or abuse
6.    Eating disorders
7.    Mental illness
8.    Somatoform disorders (psychosomatic illness)

If, before reaching the lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

## Pre-Existing Condition Limitation

The Insurance Company will not pay Disability Benefits for any period of Disability caused by or contributed to by, or resulting from, a Pre-Existing Condition. A "pre-existing condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a physician within 3 months before his or her most recent effective date of insurance.

The Pre-Existing Condition Limitation will apply to any added benefits or increases in benefits. It will not apply to a period of Disability that begins after an Employee is in Active Service for at least 12 months after his or her most recent effective date of insurance or the effective date of any added or increased benefits.

Except for any amount of benefit in excess of a Prior Plan's benefit, the Pre-Existing Condition Limitation will not apply to an Employee covered under a Prior Plan who satisfied the pre-existing condition limitation, if any, under that plan. If an Employee, covered under a Prior Plan, did not fully satisfy the pre-existing condition limitation of that plan, credit will be given for any time that was satisfied.

Time will not be credited for any day an Employee is not actively at work due to his or her Injury or Sickness. The Pre-Existing Condition Limitation will be extended by the number of days the Employee is not actively at work due to his or her Injury or Sickness.

## Disability Benefit Calculation

The Disability Benefit for any month Disability Benefits are payable is shown in the Schedule of Benefits. Disability Benefits are based on a 30 day period. They will be prorated if payable for any period less than a month.



000035

## Work Incentive Benefit

If an Employee is covered for Work Incentive Benefits, he or she may return to work while Disabled and Disability Benefits will continue. The conditions under which an Employee may return to work and the amount of this benefit are shown in the Schedule of Benefits.

The Insurance Company will review the Employee's status and will require satisfactory proof of earnings and continued Disability.

## Other Income Benefits

While an Employee is Disabled, he or she may be eligible for benefits from other income sources. If so, the Insurance Company may reduce the Disability Benefits payable by the amount of such Other Income Benefits. The extent to which Other Income Benefits will reduce any Disability Benefits payable under the Policy is shown in the Schedule of Benefits.

Other Income Benefits include:

1. any amounts which the Employee or any dependents, if applicable, receive (or are assumed to receive*) under:
   a. the Canada and Quebec Pension Plans;
   b. the Railroad Retirement Act;
   c. any local, state, provincial or federal government disability or retirement plan or law as it pertains to the Employer;
   d. any sick leave plan of the Employer;
   e. any work loss provision in mandatory "No-Fault" auto insurance;
   f. any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.

2. any Social Security disability benefits the Employee or any third party receives (or is assumed to receive*) on the Employee's behalf or for his or her dependents; or, if applicable, which his or her dependents receive (or are assumed to receive*) because of the Employee's entitlement to such benefits.

3. any retirement plan benefits funded by the Employer. "Retirement plan" means any defined benefit or defined contribution plan sponsored or funded by an employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.

4. any proceeds payable under any franchise or group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, the Insurance Company will pay its pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

5. any amounts paid on account of loss of earnings or earning capacity through settlement, judgment, arbitration or otherwise, where a third party may be liable, regardless of whether liability is determined.

6. any wage or salary for work performed. If an Employee is covered for Work Incentive Benefits, the Insurance Company will only reduce Disability Benefits to the extent provided under the Work Incentive Benefit in the Schedule of Benefits.

22

**000036**

EXHIBIT A

Dependents include any person who receives (or is assumed to receive) benefits under any applicable law on account of an Employee's entitlement to benefits.

   \* See the Assumed Receipt of Benefits provision.

*Increases in Other Income Benefits*

After the first deduction for any Other Income Benefit (except wage or salary) is made, benefits will not be further reduced during that period of Disability due to any cost of living increase in that Other Income Benefit.

*Lump Sum Payments*

Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated the lump sum will be prorated monthly over a five year period.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

*Assumed Receipt of Benefits*

The Insurance Company will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them. These assumed benefits will be the amount the Insurance Company estimates the Employee (or his or her dependents, if applicable) may be eligible to receive. Disability Benefits will be reduced by the amount of any assumed benefits as if they were actually received.

Except for any wage or salary for work performed while Disability Benefits are payable, this assumption will not be made if the Employee gives the Insurance Company proof of the following events.
1.    Application was made for these benefits
2.    A Reimbursement Agreement is signed
3.    Any and all appeals were made for these benefits or the Insurance Company determines further appeals will not be successful
4.    Payments were denied

The Insurance Company will not assume receipt of, nor reduce benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until the Employee actually receives them.

*Social Security Assistance*

The Insurance Company will, at its discretion, assist the Employee in applying for Social Security Disability Income (SSDI) benefits. Disability Benefits will not be reduced by the assumed receipt of SSDI benefits while the Employee participates in the Social Security Assistance Program.

The Insurance Company may require the Employee to file an appeal if it believes a reversal of a prior decision is possible. If the Employee refuses to participate in, or cooperate with, the Social Security Assistance Program, the Insurance Company will assume receipt of SSDI benefits until the Employee gives us proof that all administrative remedies are exhausted.

23

000037

EXHIBIT A

Recovery of Overpayment

If benefits are overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods.

1.    A request for lump sum payment of the overpaid amount
2.    A reduction of any amounts payable under the Policy

If there is an overpayment due when an Employee dies, any benefits payable under the Policy will be reduced to recover the overpayment.

TL-004771

## ADDITIONAL BENEFITS

**Rehabilitation During A Period of Disability**

If, while an Employee is Disabled, the Insurance Company determines that he or she is a suitable candidate for rehabilitation he or she may participate in a Rehabilitation Plan. The terms and conditions of the Rehabilitation Plan must be mutually agreed upon by the Employee and the Insurance Company.

The Insurance Company may require an Employee to participate in a rehabilitation assessment or a Rehabilitation Plan at our expense. The Insurance Company will work with the Employee, the Employer and the Employee's Physician and others, as appropriate, to develop a Rehabilitation Plan. If the Employee refuses to participate in the rehabilitation efforts, Disability Benefits will not be payable.

The Rehabilitation Plan may, at the Insurance Company's discretion, allow for payment of the Employee's medical expense, education expense, moving expense, accommodation expense or family care expense while he or she participates in the program.

A "Rehabilitation Plan" is a written agreement between the Employee and the Insurance Company in which the Insurance Company agrees to provide, arrange or authorize vocational or physical rehabilitation services.

**Spouse Benefit**

While an Employee is Disabled, his or her Spouse may, at the option of the Insurance Company, be eligible to participate in a Rehabilitation Plan. To be eligible, the following conditions must be met.

1.    The Employee must be continuously Disabled for 12 months
2.    The Spouse's earnings must be 60% or less than the Employee's Covered Earnings
3.    The Spouse must be determined by the Insurance Company to be a suitable candidate for Rehabilitation.

The Spouse's Rehabilitation Plan may include, at the Insurance Company's discretion, payment of the Spouse's education expenses, reasonable job placement expenses and moving expenses. It may also include family care expenses if necessary for the Spouse to be retrained under the Rehabilitation Plan.

Disability Benefits will be reduced by 50% of a Spouse's earnings from Rehabilitative Work. If the Spouse was working before the Rehabilitation Plan begins, Disability Benefits will be reduced by 50% of the increase in income that results from a Spouse's participation in the program.

000038        EXHIBIT  A

"Spouse" means the Employee's lawful spouse living with the Employee on the date his or her Disability begins. The Rehabilitation Plan will end if the Spouse is not living with the Employee during the term of the agreement.

TL-005105

### Survivor Benefit

The Insurance Company will pay a Survivor Benefit if an Employee dies while Monthly Benefits are payable. The Employee must have been continuously Disabled for the Survivor Benefit Waiting Period before the first benefit is payable. These benefits will be payable for the Maximum Benefit Period for Survivor Benefits.

Benefits will be paid to the Employee's Spouse. If there is no Spouse, benefits will be paid in equal shares to the Employee's surviving Children. If there are no Spouse and no Children, benefits will be paid to the Employee's estate.

"Spouse" means an Employee's lawful spouse. "Children" means an Employee's unmarried children under age 21 who are chiefly dependent upon the Employee for support and maintenance. The term includes a stepchild living with the Employee at the time of his or her death.

TL-005107

## EXCLUSIONS

The Insurance Company will not pay Disability Benefits for a Disability that results, directly or indirectly, from:

1.  suicide, attempted suicide, or whenever an Employee injures himself or herself on purpose.
2.  war or any act of war, whether or not declared.
3.  serving on full-time active duty in any armed forces. If the Employee sends proof of military service, the Insurance Company will refund the portion of the premium paid to cover the Employee during a period of such service.
4.  active participation in a riot.
5.  commission of a felony.
6.  revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.

The Insurance Company will not pay Disability Benefits for any period of Disability during which the Employee:

7.  is incarcerated in a penal or corrections institution.
8.  is not receiving Appropriate Care.
9.  fails to cooperate with the Insurance Company in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.
10. refuses to participate in rehabilitation efforts as required by the Insurance Company.

EXHIBIT A

11.    refuses to participate in a Transitional Work Arrangement or other modified work arrangement.

"Transitional Work Arrangement" means any work offered to the Employee by the Employer or an affiliated company while the Employee is Disabled and which may be his or her own or any occupation. The term includes but is not limited to reassigned duties, work site modification, flexible work arrangements, job adaptation or special equipment.

TL-004772

## CLAIM PROVISIONS

### Notice of Claim
Written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, is not given in that time, the claim will not be invalidated or reduced if it is shown that notice was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Employer's Name, the Policy Number and the claimant's name and address.

### Claim Forms
When the Insurance Company receives notice of claim, the Insurance Company will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by the Insurance Company, the proof requirements will be met by submitting, within the time required under the "Proot of Loss" section, written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, of the nature and extent of the loss.

### Claimant Cooperation Provision
Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

### Insurance Data
The Employer is required to cooperate with the Insurance Company in the review of claims and applications for coverage. Any information the Insurance Company provides in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

### Proof of Loss
Written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is not given in that 90 day period, the claim will not be invalidated nor reduced if it is shown that it was given as soon as was reasonably possible. In any case, written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given not more than one year after that 90 day period. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is provided outside of these time limits, the claim will be denied. These time limits will not apply while the person making the claim lacks legal capacity.

EXHIBIT A

Written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, that the loss continues must be furnished to the Insurance Company at intervals required by us. Within 30 days of a request, written proof of continued Disability and Appropriate Care by a Physician must be given to the Insurance Company.

### Time of Payment
Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which the Insurance Company is liable, will be paid at that time.

### To Whom Payable
Disability Benefits will be paid to the Employee. If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, the Insurance Company may, at its option, make payment to the person or institution appearing to have assumed custody and support.

If an Employee dies while any Disability Benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release the Insurance Company from all liability for any payment made.

For plans subject to the Employee Retirement Income Security Act (ERISA), the Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has appointed the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extent permitted by law.

The Insurance Company has no fiduciary responsibility with respect to the administration of The Plan except as described above. It is understood that the Insurance Company's sole liability to the Plan and to Participants and Beneficiaries under The Plan shall be for the payment of benefits provided under this Policy.

### Physical Examination and Autopsy
The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.

### Legal Actions
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished.

27

EXHIBIT A

## Time Limitations

If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

## Physician/Patient Relationship

The Insured will have the right to choose any Physician who is practicing legally. The Insurance Company will in no way disturb the Physician/patient relationship.

TL-004724

## ADMINISTRATIVE PROVISIONS

## Premiums

The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

## Changes in Premium Rates

The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice. No change in rates will be made until 24 months after the Policy Effective Date. An increase in rates will not be made more often than once in a 12 month period. However, the Insurance Company reserves the right to change the rates even during a period for which the rate is guaranteed if any of the following events take place.

1. The terms of the Policy change.
2. A division, subsidiary, affiliated company or eligible class is added or deleted from the Policy.
3. There is a change in the factors bearing on the risk assumed.
4. Any federal or state law or regulation is amended to the extent it affects the Insurance Company's benefit obligation.
5. The Insurance Company determines that the Employer has failed to promptly furnish any necessary information requested by the Insurance Company, or has failed to perform any other obligations in relation to the Policy.

If an increase or decrease in rates takes place on a date that is not a Premium Due Date, a pro rata adjustment will apply from the date of the change to the next Premium Due Date.

## Reporting Requirements

The Employer must, upon request, give the Insurance Company any information required to determine who is insured, the amount of insurance in force and any other information needed to administer the plan of insurance.

## Payment of Premium

The first premium is due on the Policy Effective Date. After that, premiums will be due monthly unless the Employer and the Insurance Company agree on some other method of premium payment.

If any premium is not paid when due, the plan will be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

EXHIBIT A

**Notice of Cancellation**

The Employer or the Insurance Company may cancel the Policy as of any Premium Due Date by giving 31 days advance written notice. If a premium is not paid when due, the Policy will automatically be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

**Policy Grace Period**

A Policy Grace Period of 31 days will be granted for the payment of the required premiums under this Policy. This Policy will be in force during the Policy Grace Period. The Employer is liable to the Insurance Company for any unpaid premium for the time this Policy was in force.

**Grace Period for the Insured**

If the required premium is not paid on the Premium Due Date, there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

**Reinstatement of Insurance**

An Employee's insurance may be reinstated if it ends because the Employee is on an unpaid leave of absence.

An Employee's insurance may be reinstated only if reinstatement occurs within 12 weeks (3 months for Class 3 Employees) from the date insurance ends due to an Employer approved unpaid leave of absence. For insurance to be reinstated the following conditions must be met.
1.    An Employee must be in a Class of Eligible Employees.
2.    The required premium must be paid.
3.    A written request for reinstatement must be received by the Insurance Company within 31 days from the date an Employee returns to Active Service.

Reinstated insurance will be effective on the date the Employee returns to Active Service. If an Employee did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation (if any) before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720

## GENERAL PROVISIONS

**Entire Contract**

The entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Employees.

**Incontestability**

All statements made by the Employer or by an Employee are representations not warranties. No statement will be used to deny or reduce benefits or be used as a defense to a claim, unless a copy of the instrument containing the statement has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

After two years from an Employee's effective date of insurance, or from the effective date of any added or increased benefits, no such statement will cause insurance to be contested except for fraud.

EXHIBIT A

**Misstatement of Age**

If an Employee's age has been misstated, the Insurance Company will adjust all benefits to the amounts that would have been purchased for the correct age.

**Policy Changes**

No change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions.

**Workers' Compensation Insurance**

The Policy is not in lieu of and does not affect any requirements for coverage under any Workers' Compensation Insurance Law.

**Certificates**

A certificate of insurance will be delivered to the Employer for delivery to Employees. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid.

**Assignment of Benefits**

The Insurance Company will not be affected by the assignment of an Employee's certificate until the original assignment or a certified copy of the assignment is filed with the Insurance Company. The Insurance Company will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided coverage under the Policy is in effect. This insurance may not be levied on, attached, garnisheed, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Clerical Error**

A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**

The Employer and Plan Administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726 (MI)

EXHIBIT A

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

### Active Service

An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.

1.  He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.
2.  The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

### Appropriate Care

Appropriate Care means the determination of an accurate and medically supported diagnosis of the Employee's Disability by a Physician, or a plan established by a Physician of ongoing medical treatment and care of the Disability that conforms to generally accepted medical standards, including frequency of treatment and care.

### Consumer Price Index (CPI-W)

The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

### Employee

For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is insured under the Policy.

### Employer

The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is acting as an agent of the Insured for transactions relating to this insurance. The actions of the Employer shall not be considered the actions of the Insurance Company.

### Full-time

Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

### Indexed Covered Earnings

For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:

1.  10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or
2.  the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

000045      EXHIBIT A

### Injury

Any accidental loss or bodily harm which results directly and independently of all other causes from an Accident.

### Insurability Requirement

An eligible person will satisfy the Insurability Requirement for an amount of coverage on the day the Insurance Company agrees in writing to accept him or her as insured for that amount. To determine a person's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

### Insurance Company

The Insurance Company underwriting the Policy is named on the Policy cover page.

### Insured

A person who is eligible for insurance under the Policy, for whom insurance is elected, the required premium is paid and coverage is in force under the Policy.

### Physician

Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of an Employee or spouse, or a person living in an Employee's household.

### Prior Plan

The Prior Plan refers to the plan of insurance providing similar benefits sponsored by the Employer in effect directly prior to the Policy Effective Date.

### Sickness

Any physical or mental illness.

TL-004708

EXHIBIT A

LIFE INSURANCE COMPANY OF NORTH AMERICA
PHILADELPHIA, PENNSYLVANIA

We, Kellogg Company, whose main office address is Battle Creek, MI, hereby apply to the Life Insurance Company of North America for Policy Number FLK-980005.

We approve and accept the terms of this Policy.

This application is to be signed in duplicate.  One part is to be attached to the Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Policy.

Kellogg Company
(Full or Corporate Name of Applicant)

Signed at_____ By _____
                                                                                (Signature and Title)

On_____ Witness
_____
(To be signed by Licensed Resident Agent where required by law)

TL-004778                         (This Copy Is To Remain Attached To The Policy)

-------------------------------------------------------------------------------------------------------

LIFE INSURANCE COMPANY OF NORTH AMERICA
PHILADELPHIA, PENNSYLVANIA

We, Kellogg Company, whose main office address is Battle Creek, MI, hereby apply to the Life Insurance Company of North America for Policy Number FLK-980005.

We approve and accept the terms of this Policy.

This application is to be signed in duplicate.  One part is to be attached to the Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Policy.

Kellogg Company
(Full or Corporate Name of Applicant)

Signed at_____ By _____
                                                                                (Signature and Title)

On_____ Witness
_____
(To be signed by Licensed Resident Agent where required by law)

TL-004778                         (This Copy Is To Be Returned To Us)

EXHIBIT A

000047

## LIFE INSURANCE COMPANY OF NORTH AMERICA
### (herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Kellogg Company
(herein called the Policyholder)

Policy No.:  FLK-980005

This Amendment will be in effect on the Effective Date(s) shown below only for insured Employees in Active Service on that date.  If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will be effective on the date he returns to Active Service.

The Company and the Policyholder hereby agree that the Policy is amended as follows:

1.      Effective June 1, 2003, the following provision is added to the Policy for Class 1 ,2 ,3 and 4:

   **Annual Enrollment Period**
   During the Annual Enrollment Period, an eligible Employee may elect Disability Benefits only if he or she satisfies the Insurability Requirement.

2.      Effective June 1, 2003, the Effective Date of Insurance is replaced by the following:

### EFFECTIVE DATE OF INSURANCE

An Employee will be insured on the date he or she becomes eligible, if the Employee is not required to contribute to the cost of this insurance.

An Employee who is required to contribute to the cost of this insurance may elect to be insured only by authorizing payroll deduction in a form approved by the Employer and the Insurance Company.  The effective date of this insurance depends on the date coverage is elected.

Insurance for an Employee who applies for insurance within 31 days after he or she becomes eligible is effective on the latest of the following dates. ·
1.      The Policy Effective Date.
2.      The date payroll deduction is authorized.
3.      The date the Insurance Company receives the Employee's completed enrollment form.

If an Employee applies for insurance more than 31 days after eligibility, he or she may only enroll during the Annual Enrollment Period. The Insurability Requirement must be satisfied before this insurance is effective.  If approved, this insurance is effective on the date the Insurance Company agrees in writing to insure the Employee.

If an Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the Employer on a Full-time basis.

TL-004712

000048

PITTSBURGH

AUG 1 5 2003

Group Life & Disability
Coverage Unit

EXHIBIT A

3.  Effective June 1, 2003, the following definition is added to the Policy:

**Annual Enrollment Period**
The period in each calendar year when an eligible Employee may enroll for or change benefit elections under the Policy.  This period must be agreed upon the Employer and the Insurance Company.

Except for the above, this Amendment does not change the Policy in any way.

FOR THE COMPANY

By: _____

Gregory H. Wolf, President

Date:  August 11, 2003

Amendment No. 1

TL-004780

000049

EXHIBIT   A

PITTSBURGH
AUG 1 5 2003
Group Life & Disability
Coverage Unit

LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Kellogg Company
(herein called the Policyholder)

Policy No.: FLK 980005

This Amendment will be in effect on the Effective Date(s) shown below only for insured Employees in Active Service on that date.  If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will be effective on the date he returns to Active Service.

The Company and the Policyholder hereby agree that the Policy is amended as follows:

Effective January 1, 2003,  the **Mental Illness, Alcoholism and Drug Abuse Limitation** is replaced by the following:

## Applicable to Class 2 Only
**Limitation for Disabilities Due to Mental Illness or Nervous Disorders**
The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions.  The Employee is covered for 24 months, including the Benefit Waiting Period, if the Employee is Disabled due to any of the following conditions.

1.    Mental or Nervous Disorder or Disease, unless the Disability results from:

    a.    Schizophrenia;
    b.    Bipolar disorder;
    c.    Dementia; or
    d.    Organic brain disease.

"Mental or Nervous Disorder or Disease" means a medical condition of sufficient severity to meet the diagnostic criteria established in the current Diagnostic and Statistical Manual of Mental Disorders.  The Employee must be receiving Appropriate Care for the condition by a mental health Physician.

2.    Neuromusculoskeletal and soft tissue disorder including, but not limited to, any disease or disorder of the spine or extremities and their surrounding soft tissue;  including sprains and strains of joints and adjacent muscles, unless the Disability has objective evidence of:

    a.    Seropositive arthritis;
    b.    Spinal tumors, malignancy, or vascular malformations;
    c.    Radiculopathies;
    d.    Myelopathies;
    e.    Traumatic spinal cord necrosis; or
    f.    Musculopathies.

**PITTSBURGH**

**MAY 1 2 2004**

3.    Chronic fatigue syndrome and related conditions.

Group Life & Disability
Coverage Unit

In no event will Monthly Benefits be payable longer than the Maximum Benefit Period as shown in the Schedule of Benefits.

**000050**

**EXHIBIT A**

A02

**Limitation for Disabilities Due to Alcoholism and Drug Abuse**
The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. The Employee is covered for 24 months, including the Benefit Waiting Period, if the Employee is Disabled due to any of the following conditions.

1.      Alcoholism
2.      Drug addiction or abuse

Monthly Benefits are limited to one period of Disability during the Employee's lifetime. The Employee must be participating in an available rehabilitative program recommended by a Physician. An available rehabilitative program is a program available to the Employee through either: (i) another group plan of the Employer (such as an Employee Assistance Program or Medical Plan); or (ii) services generally available to the public through local community services at no or minimal cost to the Employee. In no event will Monthly Benefits be payable beyond the earlier of:

1.      the first 24 months of Disability, including the Benefit Waiting Period;
2.      the date the Employee is no longer participating in the rehabilitative program;
3.      the date the Employee refuses to participate in an available rehabilitative program; or
4.      the date the Employee completes the rehabilitative program.

### Applicable to all classes, excluding Class 2
**Mental Illness, Alcoholism and Drug Abuse Limitation**
The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1.      Alcoholism
2.      Anxiety disorders
3.      Delusional (paranoid) disorders
4.      Depressive disorders
5.      Drug addiction or abuse
6.      Eating disorders
7.      Mental illness
8.      Somatoform disorders (psychosomatic illness)

If, before reaching the lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

Except for the above, this Amendment does not change the Policy in any way.

FOR THE COMPANY

By:    _Gregory H. Wolf_

       Gregory H. Wolf, President

Date: May 4, 2004

Amendment No. 2
TL-004780

PITTSBURGH

MAY 1 2 2004

Group Life & Disability
Coverage Unit

A-2

000051

EXHIBIT  A

## LIFE INSURANCE COMPANY OF NORTH AMERICA
### (herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Kellogg Company
(herein called the Policyholder)

Policy No.: FLK 980005

This Amendment will be in effect on the Effective Date(s) shown below only for insured Employees in Active Service on that date. If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will be effective on the date he returns to Active Service.

The Company and the Policyholder hereby agree that the Policy is amended as follows:

Effective January 1, 2005, the Definition of Covered Earnings for Class 1 is replaced by the following:

**Definition of Covered Earnings**

**Core Plan:**
For Full-time Employees, excluding Kellogg Snacks and Kellogg Sales Employees, Covered Earnings means an Employee's base annual wage or salary as reported by the Employer for work performed for the Employer during the prior calendar year. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

For Full-time Kellogg Snacks and Kellogg Sales Employees with at least one year of service, Covered Earnings means an Employee's base annual wage or salary, including earnings received from bonuses and commissions or the default/market salary* as reported by the Employer for work performed for the Employer during the prior calendar year, whichever is higher.

For Full-time Kellogg Snacks and Kellogg Sales Employees with less than one year of service, Covered Earnings means the Employee's default/market salary*.

For Part-time Employees, Covered Earnings means an Employee's average annual salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

**Buy-up Plan:**
For Full-time Employees, excluding Kellogg Snacks and Kellogg Sales Employees, Covered Earnings means an Employee's base annual wage or salary including earnings received from bonuses and commissions, as reported by the Employer for work performed for the Employer during the prior calendar year. It does not include amounts received as overtime pay or other extra compensation.

For Full-time Kellogg Snacks and Kellogg Sales Employees with at least one year of service, Covered Earnings means an Employee's base annual wage or salary, including earnings received from bonuses and commissions or the default/market salary* as reported by the Employer for work performed for the Employer during the prior calendar year, whichever is higher.

For Full-time Kellogg Snacks and Kellogg Sales Employees with less than one year of service, Covered Earnings means the Employee's default/market salary*.

000052          JUN 2 1 2005          EXHIBIT A

A03

For Part-time Employees, Covered Earnings means an Employee's average annual salary including bonuses, as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It does not include amounts received as overtime pay, commissions or other extra compensation.

Covered Earnings are determined initially on the date an Employee applies for coverage. For Full-time Employees, a change in the amount of Covered Earnings is effective on January 1 of each year, if the Employer gives us written notice of the change and the required premium is paid. For Part-time Employees, a change in the amount of Covered Earnings is effective on the first day of the month following the change, if the Employer gives us written notice of the change and the required premium is paid.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

* Default/market salary is based on the average total compensation of such Full-time Kellogg Snacks or Kellogg Sales Employees.

Except for the above, this Amendment does not change the Policy in any way.

FOR THE COMPANY

By:

       Gregory H. Wolf, President

Date: June 20, 2005

Amendment No. 03

TL-004780

000053                                   EXHIBIT   A

A03

LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Kellogg Company
(herein called the Policyholder)

Policy No.: FLK-980005

The Company and the Policyholder hereby agree that the Policy is amended as follows:

Effective January 1, 2006, the following rates for Class 1 will be in force for coverage under the Policy:

Core Plan:      $ .23 per $100 of Covered Payroll to a maximum of $60,000
Buy-up Plan:    An additional  $ .21 per $100 of Covered Payroll to a maximum of $50,000

No change in rates will be made until 36 months after the effective date of this Amendment.  However, the Company reserves the right to change the rates at any time during a period for which the rates are guaranteed if the conditions described in the Changes in Premium Rates provision of the Policy apply.

Except for the above, this Amendment does not change the Policy in any way.

FOR THE COMPANY

By:

Gregory H. Wolf, President

Date:  November 28, 2005

Amendment No. 4 (revised)

TL-004780

NOV 28 2005

000054

EXHIBIT A

LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy   PITTSBURGH
A Contract between the Company and

Kellogg Company
(herein called the Policyholder)

APR 2 4 2006

Policy No.: FLK 980005

**Group Life & Disability
Coverage Unit**

This Amendment will be in effect on the Effective Date(s) shown below only for insured Employees in Active Service on that date. If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will be effective on the date he returns to Active Service.

The Company and the Policyholder hereby agree that the Policy is amended as follows:

1.      Effective March 1, 2006, the description of Class 1 is replaced by the following:

      Class 1   All active, Full-time salaried and non-union production Employees of the Employer including union Employees of Atlanta and San Antonio's Distribution Centers and Rome, GA regularly working a minimum of 40 hours per week and all active part-time salaried and non-union production Employees of the Employer including union Employees of Atlanta Distribution Center and Rome, GA regularly working a minimum of 1,000 hours during a 12-month period.

2.      Effective April 1, 2006, the Definition of Covered Earnings for Class 1 is replaced by the following:

**Definition of Covered Earnings**

**Core Plan:**
For Full-time Employees, excluding commission-based Kellogg Snacks and Kellogg Sales Employees, Covered Earnings means an Employee's base annual wage or salary as reported by the Employer for work performed for the Employer during the prior calendar year. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

For Full-time commission-based Kellogg Snacks and Kellogg Sales Employees, Covered Earnings means an Employee's base annual wage or salary, including earnings received from bonuses and commissions or the default/market salary* as reported by the Employer for work performed for the Employer during the prior calendar year, whichever is higher.

For Part-time Employees, Covered Earnings means an Employee's average annual salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

**Buy-up Plan:**
For Full-time Employees, excluding commission-based Kellogg Snacks and Kellogg Sales Employees, Covered Earnings means an Employee's base annual wage or salary including earnings received from bonuses and commissions, as reported by the Employer for work performed for the Employer during the prior calendar year. It does not include amounts received as overtime pay or other extra compensation.

For Full-time commission-based Kellogg Snacks and Kellogg Sales Employees, Covered Earnings means an Employee's base annual wage or salary, including earnings received from bonuses and commissions or the default/market salary* as reported by the Employer for work performed for the Employer during the prior calendar year, whichever is higher.

**000055**                        EXHIBIT   A

For Part-time Employees, Covered Earnings means an Employee's average annual salary including earnings received from bonuses, as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It does not include amounts received as overtime pay, commissions or other extra compensation.

Covered Earnings are determined initially on the date an Employee applies for coverage.  For Full-time Employees, a change in the amount of Covered Earnings is effective on January 1 of each year, if the Employer gives us written notice of the change and the required premium is paid. For Part-time Employees, a change in the amount of Covered Earnings is effective on the first day of the month following the change, if the Employer gives us written notice of the change and the required premium is paid.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

* Default/market salary is based on the average total compensation of such commission-based Full-time Kellogg Snacks or Kellogg  Sales Employees.

Except for the above, this Amendment does not change the Policy in any way.

FOR THE COMPANY

By:

Karen S. Rohan, President

Date:  April 20, 2006

Amendment No. 5

TL-004780

PITTSB.......
APR 2 4 ....
Group Life & O...
Coverage U..

000056                    EXHIBIT  A

LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Kellogg Company
(herein called the Policyholder)

Policy No.: FLK 980005

This Amendment will be in effect on the Effective Date(s) shown below only for insured Employees in Active Service on that date.  If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will be effective on the date he returns to Active Service.

Effective January 1, 2007, the **Definition of Covered Earnings for Class 1** is replaced by the following:

**Definition of Covered Earnings**

**Core Plan:**
For Full-time Employees, excluding commission-based Kellogg Snacks and Kellogg Sales Employees, Covered Earnings means an Employee's base annual wage or salary as reported by the Employer for work performed for the Employer just prior to the date of disability.  It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

For Full-time commission-based Kellogg Snacks and Kellogg Sales Employees, Covered Earnings means an Employee's base annual wage or salary, including earnings received from bonuses and commissions or the default/market salary* as reported by the Employer for work performed for the Employer just prior to the date of disability, whichever is higher.

For part-time Employees, Covered Earnings means an Employee's average annual salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

Covered Earnings are determined initially on the date an Employee applies for coverage.  A change in the amount of Covered Earnings is effective on the first day of the month following the change, if the Employer gives us written notice of the change and the required premium is paid.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

* Default/market salary is based on the average total compensation of Kellogg Snacks commissioned Employees.

**Buy-up Plan:**
For Kellogg and non-commissioned Employees, Covered Earnings means an Employee's base annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins.  It includes amounts received as bonuses (including Annual Incentive Plan (AIP) bonus and other types of bonus that are included in pensionable earnings) during the prior calendar year.  It does not include amounts received as overtime pay or other extra compensation.

For Kellogg Snacks and Kellogg Sales commissioned Employees, Covered Earnings means an Employee's base annual wage or salary including earnings received from commissions and bonuses (including Annual Incentive Plan (AIP) bonus and other types of bonus that are included in pensionable earnings) as in effect during the prior calendar year, or the default/market salary* as reported by the Employer for work performed for the Employer during the prior calendar year, whichever is higher.

**000057**

**PITTSBURGH**

JUL 2 6 2007

Group Life & Disability
Coverage Unit

EXHIBIT A

*A06  p1*

Covered Earnings are determined initially on the date an Employee applies for coverage.  A change in the amount of Covered Earnings is effective on the first day of the month following the change, if the Employer gives us written notice of the change and the required premium is paid.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

* Default/market salary is based on the average total compensation of Kellogg Snacks commissioned Employees.

**PITTSBURGH**

JUL 2 6 2007

Group Life & Disability
Coverage Unit

Except for the above, this Amendment does not change the Policy in any way.

FOR THE COMPANY

By: *Karen S Rohan*

      Karen S. Rohan, President

Date:  July 25, 2007

Amendment No. 6 (revised)

TL-004780

000058          EXHIBIT  A

### LIFE INSURANCE COMPANY OF NORTH AMERICA
### (herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Kellogg Company
(herein called the Policyholder)

Policy No.: FLK 980005

This Amendment will be in effect on the Effective Date(s) shown below only for insured Employees in Active Service on that date. If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will be effective on the date he returns to Active Service.

Effective January 1, 2007, the Definition of Covered Earnings under the Policy is replaced by the following:

**Definition of Covered Earnings**

For Kellogg and non-commissioned Employees, Covered Earnings means an Employee's base annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It includes amounts received as bonuses (including Annual Incentive Plan (AIP) bonus and other types of bonus that are included in pensionable earnings) during the prior calendar year. It does not include amounts received as overtime pay or other extra compensation.

For Kellogg Snacks and Kellogg Sales commissioned Employees, Covered Earnings means an Employee's base annual wage or salary including earnings received from commissions and bonuses (including Annual Incentive Plan (AIP) bonus and other types of bonus that are included in pensionable earnings) as in effect during the prior calendar year, or the default/market salary* as reported by the Employer for work performed for the Employer during the prior calendar year, whichever is higher.

Covered Earnings are determined initially on the date an Employee applies for coverage. For Full-time Employees, a change in the amount of Covered Earnings is effective on the date of the change, if the Employer gives us written notice of the change and the required premium is paid. For Part-time Employees, a change in the amount of Covered Earnings is effective on the first day of the month following the change, if the Employer gives us written notice of the change and the required premium is paid.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

* Default/market salary is based on the average total compensation of Kellogg Snacks commissioned Employees.

Except for the above, this Amendment does not change the Policy in any way.

FOR THE COMPANY

By:

Karen S. Rohan, President

Date: May 11, 2007

Amendment No. 7

TL-004780

000059

EXHIBIT A

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**(herein called the Company)**

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Kellogg Company
(herein called the Policyholder)

Policy No.:  FLK 980005

The Company and the Policyholder hereby agree that the Policy is amended as follows:

Effective January 1, 2008, the following shall be added to the Schedule of Affiliates under the Policy:

Clearfield Plant

Except for the above, this Amendment does not change the Policy in any way.

FOR THE COMPANY

By:

Karen S. Rohan, President

Date:  December 4, 2007

Amendment No. 07

TL-004780

PITTSBURGH
DEC 0 7 2007
Group Life & Disability
Coverage Unit

000060          EXHIBIT A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV11- 5209 PSG (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Frank N. Darras #128904      email:   frank@darraslaw.com
Lissa A. Martinez #206994   email:   lmartinez@darraslaw.com
Susan B. Grabarsky #203004 email: sgrabarsky@darraslaw.com
DARRASLAW                              (909) 390-3770
3257 East Guasti Road, Suite 300,     Ontario, CA 91761

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN HAYWOOD,<br><br>                                    PLAINTIFF(S)<br><br>                         v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA; and, KELLOGG COMPANY EMPLOYEE WELFARE BENEFIT PLAN,<br><br>                                    DEFENDANT(S). | CASE NUMBER<br><br>CV11-05209 PSG(MANX)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): _____

        A lawsuit has been filed against you.

        Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _____DARRASLAW_____, whose address is _____3257 East Guasti Road, Suite 300, Ontario, CA 91761 (909) 390-3770_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Dated:  JUN 2 2 2011
_____

Clerk, U.S. District Court

By: _____
        Deputy Clerk

        *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                          **SUMMONS**

ORIGINAL

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| KELVIN HAYWOOD, | LIFE INSURANCE COMPANY OF NORTH AMERICA; and, KELLOGG COMPANY EMPLOYEE WELFARE BENEFIT PLAN, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| DarrasLaw          (909) 390-3770 3257 E. Guasti Road, Suite 300, Ontario, California 91761 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No    ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C.§§1331, 1337 & 29 U.S.C.§1132(a),(e),(f) & (g) of the Employee Retirement Income Security Act of 1974, 29 U.S.C.§1101, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☒ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**CV11-05209**

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.



American LegalNet, Inc.
www.FormsWorkflow.com

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No  ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No  ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| . | Texas |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Life Ins. Co. of N. America - 29 U.S.C. §1132(e)(2) found in this district is registered as a corporation with state of California, etc. | Life Insurance Company of North America - Pennsylvania Kellogg Company - Michigan |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _/s/ Frank N. Darras_   Date June 21, 2011

FRANK N. DARRAS

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com